Case number 10-6131 William Canada Jr. v. American Airlines. Name of pilot et al. Court ordered that to exceed 15 minutes to preside. Mr. Dalmat for the appellant. Good morning and may it please the court. My name is Darren Dalmat. I represent the appellant William Canada and I would like to reserve 4 minutes for rebuttal. You may. The district court's grant of summary judgment for American Airlines and its pilot retirement pension plan should be reversed because the late retirement provisions on which the district court so heavily relied cannot bear the weight that the court put on them and for two reasons. First, American and the plan themselves did not rely on the late retirement provisions at all when they issued the suspension decision in 2008, the suspension of benefits decision that is challenged in this case. The late retirement provisions emerged as a rationale that the appellees relied upon only after this litigation commenced. And because American and the plan's lawyers, unlike its administrators, are not fiduciaries of the plan, their interpretations do not command the deference that the interpretations of the fiduciaries would. The second reason that the late retirement provisions cannot bear the weight that the lower court put on them is because American construed them to apply in a context, namely pilot employment after age 60 that would render them unreasonable at the time that they were drafted and arbitrary and capricious because that interpretation would bring those provisions into conflict with two sources of federal law. The age 60 rule, which was in effect from 1959 through 2007, and the prohibition under ERISA against discrimination based on age and the rate of benefit accrual. Beginning with the first point, the post hoc lit... Just let me stop you one second. Yes, Your Honor. About 30 seconds ago, I thought I heard you say something with respect to the plan administrators not being fiduciaries. Did you mean by that to say that Firestone v. Brook doesn't apply or was that for a different point? What I mean is that when the plan issued the suspension decision, it relied on one rationale to suspend. That rationale was 6-10. Under Firestone, that interpretation does get deferential review because it was issued by a planned fiduciary. Mark Burdett, in his capacity as a member of the PBAC, the Pension Benefit Administration Committee, and Diane Johnson, who actually issued the suspension letter. Now, the alternative rationale, which was not appended to that suspension decision based on the rationale offered in this litigation, was based on the late retirement provisions. And under this court's precedent in University Hospital of Cleveland v. Emerson Electric, that kind of rationale that emerged for the first time in litigation, but not at the time of the benefit suspension, does not command the same kind of deference because it was not a rationale issued by a fiduciary. Okay, I get the point at least. Okay, go ahead. Thank you. So, when Ms. Johnson issued the suspension decision, she acted in accordance with the Department of Labor regulations that govern notification of suspension, and those are at 29 CFR 2530.203-3B4, which require a plan that intends to suspend benefits to provide notice, to explain the reasons for the notice, to set forth the plan provisions that authorize the suspension decision, and to actually provide a copy of those plan provisions on which the plan is relying. How did your whole post hoc litigation rationale argument fit in or not fit in, as the case may be, with the fact that this claim never got to the fiduciary that would then be the one that would presumably provide the full and complete explanation that you say is missing here? Well, in the two points, Your Honor, in the record below, the district court did find, and correctly I believe, that the letter from Mark Burdett, who was a member of the pension committee, was the only interpretation of the relevant plan provisions issued in any capacity, and it proved exhaustive. Well, that's the whole point. I mean, he writes this letter to the union in connection with a whole lot of issues. You draw a phrase out of that. And I understand that argument. As I understand how this normally would work, the pilot applies for benefits. It's denied. He then has the right to appeal that to this group called the PBAC, right? Correct. Now, here, he didn't do that. He didn't do that. The district court excused that on the grounds of futility. So, okay, I get that. The district court concluded that that wouldn't have changed the outcome. But what I'm trying to figure out is I'm assuming, logically, had he taken that step that the plan calls for, you would have gotten a full and complete explanation, presumably, as to why these benefits are being denied. Because he didn't do that, that's absent. So then to say, well, I didn't do this, so it's absent, so therefore we get to pick one phrase out of this letter that's written for another purpose, that's their only reason, now they're changing their grounds, that just doesn't seem fair. So I'm sure you have an explanation. I'd just like you to explain to me how that all fits together. Certainly. American continued from March 2008 through at least April 2010, when this litigation was in discovery, to suspend approximately 400 other pilots' benefits once they turned age 60 and continued in flying. And it's my understanding of the record, I'm not sure it's completely clear on this point, but it's my understanding that the additional suspension notices were identical to the notice issued to Canada and themselves also relied only on 610. And that happened even after this case had commenced. Did any of them go to the PBAC? Not to my knowledge. Well, so how does that help us? All the pilots, for whatever reason, choose not to pursue the avenue of relief that the plan provides for, where presumably you would have gotten an explanation. Well, Your Honor, what you have is a situation where the plan is telling the pilots one thing, 610 and 610 alone is the only ground that we're relying on to suspend your benefits, but it's telling the lower court an entirely different thing. We have two sources of plan provisions that authorize our decision, even though they continue to tell the pilots only one thing. So at the very least, I think that that contradiction... But when you say they continue to tell the pilots only one thing, you're relying upon the notice. Yes, sir. So you're saying that the notice has to include every possible justification and reason for why a plan is taking action in the notice itself. Yes, sir. And they can never change that, or they can never augment that or supplement that. I believe that... Is there a case that says that, that puts that reliance on the language in the notice itself? I believe that that requirement emerges from the Department of Labor regulation that I cited to you earlier. But am I right that the...along the lines that Judge McKeague indicated, that this notice is not in response to a claim. Normally, we review what the plan administrator or a benefits committee or some kind of appellate body gives as its reasoning, and we don't have this here because they didn't go through that avenue. So it seems to me that you've got the labor regulations, not our conventional kind of Brook versus Firestone review because you simply didn't invoke that. Is that a fair way of looking at it? That is, the question is, it's not the quality of their reasoning, which is usually what we look at in Brook, arbitrary and capricious. It seems to me you're just relying on you violated labor regulations, and therefore your action is invalid. Is that fair or not? Well, I don't think that this case turns on this question because I think even if the court were to consider the late retirement provisions, and I think it's perfectly permitted to do so, I just submit that it should do so skeptically, but under whatever standard... I only started with that because you said there are two reasons. This is the first reason. I assumed you put that number one because you thought it was the most important. So if you're now suggesting, well, okay, we can disregard that, so let's go to the second one. I put it first because I thought it was analytically most helpful, but in any event, I can move to the substance of the... Yeah, before you go to the second and your time is expiring, I'd like to ask you about the summary plan descriptions. Your briefing, which now I know is pretty three years or so old, but the briefing seems to rely heavily on terms and provisions of the summary plan descriptions. And in the intervening time, the Supreme Court has issued its decision in Amar, and that Amar would seem to have some impact upon the binding nature of any provisions of the SPDs. Would you take just a moment to address that? And I guess I'd like to know if you're still relying as heavily on these summary plan descriptions because it seemed to me that that argument has been weakened by Amar. Yes, Your Honor. It's our position that certainly, I think it was always our position and certainly our position now, that the summary plan descriptions should be read in harmony with the plan language reasonably interpreted. And because of the age 60 problem and the OBRA 86 problem, the age discrimination problem, we contend that the late retirement provisions can be reasonably interpreted only in one way. That is to apply only to post-60 employment in a non-pilot capacity. The SPDs do not conflict with that reasonable interpretation. They support it. They illuminate it. They confirm it. So there's no true conflict at all between the SPDs and the late retirement provisions. There is a conflict, however, between the SPDs and the post hoc litigation rationale that American and the plan offer to defend where they have reconstructed the meaning of the late retirement provisions, taken them out of their historical context and reinterpreted them retroactively to apply in a context where they legally could not have had the meaning that they had when they were drafted. Thank you. Anything else? Okay. Thank you, counsel. May it please the court. Although ERISA is an exceedingly complex statutory scheme, this case boils down to a relatively simple proposition. You cannot be deprived of what you never had in the first place. It is undisputed that ERISA expressly allows plans to defer retirement benefits or to suspend them, to use the technical jargon, until a worker chooses to actually retire and, crucially here, to do so without any upward actuarial adjustment on the basis of that suspension, to be clear. Indeed, the governing regulations here provide an example that is essentially this case, and I think it's close enough. We talk about it on page 23 of our brief. Actually, to read it, and it's short. Quote, if a plan with a normal retirement age of 65 provides a retirement benefit of $400 a month payable at age 65, the same $400 benefit with no upward adjustment could be paid to an employee who retires at age 68. Close quote. Again, those are the circumstances of this case. So the only question here is whether the plan validly provided for a suspension of retirement benefits or, more accurately, whether it was reasonable under the highly deferential, arbitrary, and capricious standard that Mr. Canada concedes in his briefing and today applies, whether it was reasonable for the plan administrator to interpret the plan that way. As Mr. Canada's own strenuous efforts to relax that standard of review indicate, the answer to that question is yes. Am I right that in order for the company to take advantage, if you will, of this provision or this permission, it has to be in the plan in advance and there has to be some kind of notice to the pilots or to the workers in advance? Two responses to that, Your Honor. Yes, the plan does have to provide for a suspension of benefits. And American's argument is and has always been since it was presented with this claim, as Your Honor pointed out, in the context of this litigation, has always maintained that the late retirement provisions, which provide, quote, upon retirement after normal retirement date, a member's late retirement benefits will consist of his or her basic retirement annuity in the same amount as if he or she had retired at normal retirement date. So the late retirement provision in Section 6.3 of the plan and the late retirement benefit provision that I just read in Section 7.7 of the plan do validly suspend. Second, your point about notice. I think it's important, especially in the context of Your Honor's questions about the nature of the claim here, to note that Mr. Candidate is not bringing a notice claim here. He is not alleging or claiming that there was any fault or problem with the notice that he received. He's not alleging or claiming that he was in any way misled or that any misrepresentations were made. And that fits in with the futility, which Your Honor raised as well. In other words, I believe it's in Note 8 of his brief, his opening brief, Mr. Candidate makes very clear that it's a substantive claim that he's bringing. He's not bringing a procedural challenge to the notice here and, of course, relied on that very distinction in successfully arguing to the district court that he could be excused from the administrative exhaustion requirements of the plan. So it's a little bit, I guess I would say, inaccurate in a sense to refer to a post hoc litigation strategy when the first opportunity that American had to respond to his anti-cutback claim and his anti-forfeiture claim and his breach of fiduciary duty claim was in the context of this litigation. I think you could say that, based on his argument today, he's saying that your notice had to say both 6.10 and 6.3. At least that's how I understand his argument to go. As I understand his argument below and in the briefing, he's not making a claim that the notice was defective in any way. He's not making that claim or that argument. He's certainly arguing that we're somehow not entitled or I actually think I heard him say today that this court You can't rely upon the late retirement clause because you didn't put it in the notice. That's essentially what he's saying. So to rely upon it now, that's this post litigation rationale. We disagree that the notice has to contain everything. And again, he's not bringing a notice claim. But on the merits of that, even if he were, I think the U.S. Supreme Court's decision in Frommert v. Conkright disposes of that argument. Because in that case, the plan administrator offered a rationale for its decision during the course of litigation. And the court deferred to that plan and held there was nothing improper about deferring to it. So I think the combination of the fact that having relied on this procedural substantive distinction to escape the administrative exhaustion requirement so that the first time American had the opportunity to rely. And I think in a sense, if you think about the nature of an anti-cutback claim, an anti-cutback claim says this is something I had and later you did something to the plan that took that away. Well, our argument in response to that is no. 6.10 didn't take anything away from you because the late retirement provisions already provided for that. I think it may be also important to point out that in the letter that Mr. Canada received, as all the other pilots received, that letter also commented that if there's any dispute about the provision, there is an administrative claims process to go through. I think that highlights the fact that the first time that American was presented with the anti-cutback claim and the forfeiture claim and the breach of fiduciary duty claims were in the course of this litigation. And again, Mr. Canada does not dispute that the arbitrary and capricious standard of review applies here. We simply disagree about how that standard should operate in this particular case. I'm curious about what he told us about lots of other pilots when I asked him, what have you been doing in other cases? This isn't a class action, I don't think, is it? No. Are you facing lots of other litigation from the other rest of these pilots on the same grounds? Your Honor, what the record reveals, and I believe that we stated this either in our brief or in the briefing below, none of the other, I think it's 463, at least 400 other pilots you said received the same notice, none of them have filed claims to my knowledge, or that's in the record, challenging the decision along the lines that Mr. Canada is. And you wouldn't know why, if more than Mr. Canada is upset about this, you wouldn't know why none of the other ones went through this pension board either then, right? No, Your Honor, I wouldn't. I wouldn't presume to give an explanation. Well, they didn't think they had a claim, so they didn't appeal. That could be one explanation, but there could be others, and the record doesn't reveal that, right? No, the record doesn't reflect that. I guess perhaps, and again, I would not presume to explain or speak for them. I think perhaps it speaks to the fact that the late retirement provisions at all times, it's been very clear that retirement benefits are suspended while an employee continues to work and is not actually retired, and that the plan has never required or provided an actuarial adjustment except under circumstances not present here as we talk about in our briefing. Sometimes, I ask these questions, so sometimes we don't really know what the big picture is in a lot of these cases. So obviously when Congress extended the retirement age from 60 to 65 for pilots, that affected other airlines rather than just this one. So is there a series of litigation on similar points for the other airlines too? Certainly, and perhaps counsel for Mr. Canada would know more than I. I'm not aware of any litigation against American. I'm not aware of any litigation against other airlines, but again, that's something that perhaps counsel for Mr. Canada might have greater insight. Let me just make a few more points about the late retirement provisions and the role of notice. I think Mr. Canada seems to take American to task for only referencing 6.10 in the letter that went out and in the notice that went out. I think 6.10 is about two things. It's about notice itself most fundamentally, so I think it only made sense to reference that provision and attach it to the letters providing such notice. 6.10 is also about returning to work after benefits start, not only continuing to work, as is the case here, and as the late retirement provisions address. So the two parts of the plan work together, making nothing superfluous or redundant. And again, as I understood counsel for Mr. Canada to say today, his argument is not that this court should not consider or that the district court erred in considering those late retirement provisions. We simply disagree about the way that should be put on those provisions, and I think he, as far as I know, has never claimed that they're ambiguous or confusing or misleading in any way. So it seems to me that if the district court was correct in construing all of the plans together as the precedent of this court and the Supreme Court dictate that courts must when construing the terms of a plan, that it was entirely proper for that court and for this court to consider the late retirement provisions in analyzing the claims at issue here. I think the other point I would make about both the letter from Mark Burdett and the letter that actually went out to Mr. Canada is that both of those letters were forward-looking. That is, they were not concerned with a claim, an actual claim, which of course is backward-looking, where the court, the administrator, considers the plan language in light of the actual claim that is being brought in. Again, that didn't happen here because Mr. Canada did not pursue his administrative exhaustion remedies and the district court excused him from doing so. So if there are no further questions, I'm happy to cede back the rest of my time. Thank you, Counsel. Thank you. I have your time for rebuttal. Thank you, Your Honors. A few quick points. There's one conceptual point that I think has to be made very, very clear up front, and that's the difference between a provision that defers commencement of payment of a benefit, in other words, a delay provision, and a suspension provision. Delayed commencement is explicitly permitted under ERISA 206A. There's no problem with that. Americans certainly could and did delay commencement of benefits until Canada and any other pilot fully retired. Now, whether or not benefits are delayed is an entirely different question from the amount of the benefit that a retiree is entitled to once payment on those benefits starts. The ERISA provision governing the amount of benefit payment is 203A, and counsel, which is the non-forfeiture provision, an exception to which is suspension. Why isn't that adequately addressed by 7.7? 7.7, the late retirement? Right. The late retirement provision says you get the benefits in the same amount as if you had retired at the normal retirement date. Fair. It says it's suspended. It says when you get the benefits then, when you subsequently retire, and it tells you what amount it's going to be. So I'm having a little trouble seeing where that's unclear or what the problem is. Again, the predicate question is to whom could that late retirement provision apply? And because of the age 60 rule and the age discrimination problem, at all times prior to 2007, that late retirement provision could only apply to a pilot who continued after age 60 in non-pilot employment. So, yes, I think that it's fair to read 7.7 constructively as a limited suspension provision, a provision that authorized suspension in a very limited circumstance to non-pilot employment after age 60. But as the Supreme Court's decision in Central Labor's Pension Fund against Hines teaches us, distinctions between job categories in which benefits are suspendable can be critical. In that case- The interesting aspect of that is that, as I understand it, the plan has provisions that distinguish between pilots and non-pilots. So they knew that distinction, and they addressed it in some parts of the plan. Here there's no distinction between pilots and non-pilots in either 6.3 or 6.10 or 7.7. To give the 7.7 to read it as applicable to post-60 pilots at any time before 2007 would have meant that the plan would have lost its tax preferences under ERISA. It's just an unlawful reading. And so at the most, those negative inferences that Your Honor is raising create- You're saying, well, it can't be interpreted this way because that couldn't have happened under the law at the time. Okay, fine. But why does that make it unlawful? American itself apparently thought it was unlawful because in 2009, following the age change, they changed what had been formerly 7.7 to avoid the age discrimination problem and to provide that benefits can continue to accrue until late retirement. So apparently American itself thought this was a problem. They couldn't rely after 2009 restatement on the late retirement provisions for- My time is up. Can I finish? Go ahead. Sure, finish. As authority to suspend after 2009. Unless Your Honors have other questions. Thank you, Counsel. Case will be submitted. Clerk may call the next case.